UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| CHARMAINE SMITH, ) | |
| ) | |
| Plaintiff, ) | 03:05-CV-00503-LRH-VPC |
| ) | |
| v. ) | |
| ) | ORDER |
| JAMES RICHARDSON, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

Presently before the court is a Motion for Summary Judgment (# 39[1]) filed by defendants, James Richardson ("Richardson"), Doug Tracy, Gerald Fiske ("Fiske"), Randy Scott ("Scott") and State of Nevada Department of Public Safety, Division of Parole and Probation (collectively, "Defendants"). Plaintiff, Charmaine Smith ("Smith"), has filed an opposition (# 42), and Defendants replied (# 43).

**I. Factual Background**[2]

Smith filed the present action seeking damages arising from allegations that she was sexually harassed and retaliated against in the workplace. Smith began working for the Division of

---

[1] Refers to the court's docket number.

[2] In opposing the present motion, Smith, in her points and authorities, did not cite to any evidence in the record. Therefore, the court will rely on the admissible evidence provided by Defendants in discussing the factual background. The court will not scour the record in search of evidence to support Smith's unsupported factual arguments.

Parole and Probation in July, 1989.  In October, 2003, Smith transferred to the office located in Fallon, Nevada.  The office had six sworn parole and probation officers, four males and two females including Smith.  James Richardson ("Richardson") was the supervising sergeant.

When Smith arrived at the Fallon office, she knew that the employees in that office liked to play pranks and jokes.  (Defs.' Mot. for Summ. J. (# 39), Dep. of Charmaine Smith at 53:10-15.)  In fact, Supervising Clerical Staff person Jeanne Wiggins testified that practical jokes occurred about once a week for a month.  (Defs.' Mot. for Summ. J. (# 39), Dep. of Gloria Wiggins at 93:9-25.)  The following is a discussion of the events to which Smith is complaining.

During Smith's first week at the Fallon office, someone rigged a water-filled syringe to squirt water on Smith when she opened her desk drawer.  (Defs.' Mot. for Summ. J. (# 39), Dep. of Charmaine Smith at 53:20-54:15.)  The next event occurred sometime around a December, 2003, Christmas party when Fiske put a dead lizard in a burrito he gave to Smith.  *Id*. at 89:11-92:24.  Smith testified that this incident made her "really sick."  *Id*. at 93:1.

In the spring or summer of 2004, someone put a sticker on the brake light of Smith's car that read, "Oops, I farted."  *Id*. at 103:21-23.  Smith does not know who put the sticker on her car, but suspects it was a prank by someone in the Parole and Probation office.  *Id*. at 106:23-107:10.  The next incident occurred on July 1, 2004.  On that date, Smith detected a "rancid" smell in her office somewhere near her chair.  *Id*. at 117-21.  Smith never discovered the source of the smell, and no one in the office admitted to doing something to cause the smell.  *Id.* at 133:15-21.

On October 1, 2004, Smith wrote an electronic mail to Richardson asking Richardson to inform the clerical staff and at least one sworn officer when he is leaving and approximately when he would return.  *Id*. at 139.  Richardson considered the request a joke and did not take it seriously.  (Defs.' Mot. for Summ. J. (# 39), Decl. of James Richardson ¶ 9.)  A few days later, Richardson's immediate supervisor, Lieutenant Reyn Johnson ("Johnson"), discussed Smith's request with Richardson.  *Id*.  Johnson and Richardson spoke with Smith and informed Smith that her request

was not a procedure that they felt needed to be implemented at the Fallon office. *Id*. The day after this incident, Smith claims that "people seemed different" and didn't speak to her. (Defs.' Mot. for Summ. J. (# 39), Dep. of Charmaine Smith at 152:15-17.) Smith assumed that Richardson told people about her electronic mail. *Id*. at 153:16-18.

On October 12, 2004, Smith noticed a smell that was fainter than the previous one discussed above. *Id*. at 157:2-159:3. At one point while Smith was trying to figure out what the smell was, Fiske came into Smith's office and helped Smith look for the source of the smell. *Id*. 159:18-160-15. Fiske suggested to Smith that the smell was coming from her jeans. *Id*. at 160:9-14. Smith understood this remark as a sexual reference. (Opp'n to Mot. for Summ. J. (# 42), Decl. of Charmaine Smith at 1.) Near the end of the work day, Smith pulled out her upper-right desk drawer and found a urine cup taped to the back of the drawer that had "goopy stuff in it" that appears to have been fish bait. *Id*. at 161:5-23; (Opp'n to Mot. for Summ. J. (# 42), Decl. of Charmaine Smith at 1.)

Smith suspected that Fiske was responsible for the fish bait and complained to Richardson about this incident. *Id*. at 163:12-16. Richardson received information that Fiske was responsible and verbally counseled him regarding the situation and directed him not to play any more jokes on Smith. (Defs.' Mot. for Summ. J. (# 39), Decl. of James Richardson ¶ 10.)

Sometime before June, 2005, Fiske put a dead snake outside the employee entrance to the office. (Opp'n to Mot. for Summ. J. (# 42), Dep. of Charmaine Smith at 169:16-25.) Smith discovered the snake when Fiske told her that another employee wanted to see her. *Id*. at 172:4-6. Smith understood that the snake was not directed at her; it was intended to be a joke for everyone in the office. *Id*. at 170:25-171:2, 174:19-25.

On June 7, 2005, Smith found a letter indicating that all officers who were Peace Officer's Standard Training ("POST") Category Two certified would be required to upgrade to Category One certification to receive a pay increase. *Id*. at 181:10-182:2. Smith is POST Category Two certified.

3

*Id*. at 183:1.  When Smith confronted Richardson about the letter, Richardson told her it was a joke. *Id*. at 186:15-18.  The letter was typed and distributed by Jeanne Wiggins.  Everyone in the office received a copy.  (Defs.' Mot. for Summ. J. (# 39), Decl. of Doug Tracy ¶ 11.)

The evidence presented shows that Smith was involved in two incidents in the office.  First, Plaintiff received an electronic mail containing pictures of a man that was half clothed.  (Defs.' Mot. for Summ. J. (# 39), Dep. of Charmaine Smith at 73:5-74:4.)  Smith showed the picture to "one of the girls" who wanted "all the girls to see it."  *Id*. at 74:6-20.  One of the girls wanted to put the picture on Tracy's computer.  *Id*. at 75:1-5.  Therefore, from Smith's computer, one of the girls sent the image to Tracy's computer and made it Tracy's screen saver.  *Id*. at 77:9-18.  Smith asserts that she did not think this was a good idea.  *Id.* at 76:13-14.  The second incident Smith was involved with involved a picture of Richardson.  An employee created "a huge distorted picture" of Richardson's head.  *Id*. at 79:10-13.  Smith thought this was funny and asked the employee to put the image on her computer.  *Id*. at 79:13-15.

On June, 12, 2005, Smith sent a letter to administration complaining about the June 7, 2005, letter.  (Defs.' Mot. for Summ. J. (# 39), Dep. of Charmaine Smith at 197:15-16, Letter dated June 14, 2005.)  The letter also mentioned some of the other incidents that occurred.  (Defs.' Mot. for Summ. J. (# 39), Letter dated June 14, 2005.)  Richardson was informed of the complaint and submitted a rebuttal on June 21, 2005.  (Defs.' Mot. for Summ. J. (# 39), Dep. of Charmaine Smith at 210:17-211:3.)

Following this complaint, an internal investigation was conducted by the Office of Professional Responsibility.  (Defs.' Mot. for Summ. J. (# 39), Decl. of James Richardson ¶ 17.)  At the conclusion of the investigation, Richardson was demoted.  *Id*.  In addition, Fiske was terminated, and Tracy and Scott were disciplined.  *Id*. ¶ 18.

According to Smith, in July, 2005, she was presented with information that an offender had committed a parole violation.  (Defs.' Mot. for Summ. J. (# 39), Dep. of Charmaine Smith at

232:6-236:10.)  Smith wanted Scott to conduct a preliminary inquiry[3] on the offender.  (Defs.' Mot. for Summ. J. (# 39), Decl. of Randy Scott ¶ 11.)  Scott "declined to conduct a preliminary inquiry because the offender had not been charged with a crime and, therefore, proceeding with the preliminary inquiry would have been contrary to well established Division policy and procedures."  *Id*.

On August 8, 2005, Smith filed a charge of discrimination with the Nevada Equal Rights Commission.  (Defs.' Mot. for Summ. J. (# 39), Charge of Discrimination, Ex. B.)  In her charge, Smith claimed she was forced to work in a hostile environment due to retaliation and that she was not accommodated for her disability.  *Id*.  Smith also claimed she was retaliated against for filing a gender discrimination complaint.  *Id*.  As of the date the present motion was filed, Smith is still employed in the Fallon office.  (Defs.' Mot. for Summ. J. (# 39), Dep. of Charmaine Smith at 227:20-24.)

**II. Legal Standard**

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party bears the burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*,

---

[3]"Preliminary Inquiries are like a preliminary hearing in a criminal proceeding, to determine whether there is sufficient basis to find an offender in violation of probation."  (Defs.' Mot. for Summ. J. (# 39), Decl. of Randy Scott ¶ 11.)

5

477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001). For those issues where the moving party will not have the burden of proof at trial, the movant must point out to the court "that there is an absence of evidence to support the nonmoving party's case." *Catrett,* 477 U.S. at 325.

In order to successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to establish a genuine dispute; there must be evidence on which the jury could reasonably find for the plaintiff. *See id.* at 252.

**III. Discussion**

As result of the conduct described above, Smith filed this action seeking damages based on 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964, the Rehabilitation Act ("RA"), and Intentional Infliction of Emotional Distress. Defendants are seeking summary judgment on each cause of action. Thus, the court will address each cause of action in turn.

**A. Title VII**

Defendants argue that Smith has not alleged sexual harassment by a supervisor or person

6

1  with immediate supervisory authority.  In addition, Defendants argue that none of the pranks or
2  jokes had anything to do with gender or discrimination and that they were not so severe or
3  pervasive to alter the terms and conditions of Smith's employment.  Smith responds by arguing that
4  Richardson condoned the sexual harassment.  Smith further argues that the pranks were based on
5  Smith's gender.

6  Title VII makes it an unlawful employment practice "to discriminate against any individual
7  with respect to his compensation, terms, conditions, or privileges of employment, because of such
8  individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  Sexual
9  harassment is a species of gender discrimination and thus constitutes a violation of § 2000e-2.
10 *Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000).  A claim for sexual harassment
11 under Title VII can fall under one of two theories:  quid pro quo or hostile working environment.
12 *Id.*  To survive summary judgment on a claim based on hostile working environment, "a plaintiff
13 must show that: (1) she was subjected to verbal or physical conduct of a sexual nature; (2) the
14 conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the
15 conditions of her employment and create an abusive work environment." *Porter v. California*
16 *Dep't of Corr.*, 383 F.3d 1018, 1027 (9th Cir. 2004) (citing *Vasquez v. County of Los Angeles*, 349
17 F.3d 634, 642 (9th Cir. 2004)).

18 "To determine whether conduct was sufficiently severe or pervasive to violate Title VII, we
19 look at 'all the circumstances, including the frequency of the discriminatory conduct; its severity;
20 whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it
21 unreasonably interferes with an employee's work performance.'" *Vasquez*, 349 F.3d at 643
22 (quoting *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 270-71 (2001)).  "The working
23 environment must both subjectively and objectively be perceived as abusive." *Fuller v. City of*
24 *Oakland, California*, 47 F.3d 1522, 1527 (9th Cir. 1995) (citing *Harris v. Forklift Sys., Inc.*, 510
25 U.S. 17 (1993)).  To determine if the workplace is objectively hostile, courts examine the issue
26

1  from the perspective of a reasonable person with the same fundamental characteristics as the
2  claimant. *Id.*

3  In the case at bar, there is no evidence, with the possible exception of one event, that Smith
4  was subjected to verbal or physical conduct of a sexual nature. In fact, Smith, in her points and
5  authorities, merely makes the conclusory comment that these matters relate to Smith's gender. *See*
6  (Opp'n to Mot. for Summ. J. (# 42) at 2.) The evidence in this case indicates that the employees of
7  the Fallon office played frequent jokes on each other. There is no evidence that Smith or the other
8  female officer were singled out for these jokes. Rather, the evidence indicates that these jokes,
9  regardless of how tasteless they may be, were played on everyone in the office.

10  Based on the evidence presented, the only possible sexually based comment occurred during
11  the "fish bait incident." As described above, Smith noticed a smell in her office on October 12,
12  2004. (Defs.' Mot. for Summ. J. (# 39), Dep. of Charmaine Smith at 157:2-159:3.) While Fiske
13  was helping Smith search for the origin of the smell, Fiske suggested to Smith that the smell was
14  coming from her jeans. *Id*. at 160:9-14. Smith understood this remark as a sexual reference.
15  (Opp'n to Mot. for Summ. J. (# 42), Decl. of Charmaine Smith at 1.) Smith argues that "[i]t does
16  not take much inference or presumption to allow a reasonable juror to understand this comment to
17  refer to the scent of vaginal secretions." (Opp'n to Mot. for Summ. J. (# 42) at 2.) The court finds
18  this isolated comment insufficient to form the basis of a Title VII claim. *See Craig v. M & O*
19  *Agencies, Inc.*, —F.3d —, 2007 WL 2264635 (9th Cir. 2007) ("The Supreme Court has cautioned
20  that 'simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not
21  amount to discriminatory changes in the terms and conditions of employment.'"). Even assuming
22  this isolated comment by a co-worker could form the basis of a Title VII action, the court finds
23  such a comment, when looking at the totality of the circumstances, insufficient to alter the
24  conditions of her employment and create an abusive work environment.
25  ///
26

**B. Retaliation**

Although Smith's Amended Complaint is poorly drafted and somewhat unclear, Smith appears to assert claims for retaliation under Title VII, 42 U.S.C. § 1983, and the RA.  Defendants argue that Smith is unable to prove the essential elements of any retaliation claim.  Specifically, Defendants argue that Smith is unable to demonstrate adverse job action in retaliation for protectected activity.  Smith, in opposing summary judgment, argues that two events were retaliatory.[4]  First, Smith argues that giving Richardson a copy of her complaint against him was retaliation for her filing a complaint.  Second, Smith argues that "Scott's decision not to proceed with a preliminary inquiry regarding possible parole violations by one of [Smith's] offenders was highly irregular and had never occurred before." (Opp'n to Mot. for Summ. J. (# 42) at 3.)  The court will address these alleged retaliatory acts in connection with the relevant law below.

**1. Title VII Retaliation**

Under § 2000e-3(a), it is unlawful "for an employer to discriminate against any of his employees . . . , to discriminate against any individual . . . because he has opposed any practice made an unlawful employment practice by [Title VII ], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).  To establish a prima facie case of retaliation, a plaintiff must demonstrate that "(1) she engaged in an activity protected under title VII; (2) her employer subjected her to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action." *Thomas v. City of Beaverton*, 379 F.3d 802, 811 (9th Cir. 2004) (citing *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000)).

In this case, the court finds that Defendants have met their initial burden of showing that there is no evidence to support a claim for retaliation.  Furthermore, Smith has failed to come

---

[4]Defendants' motion for summary judgment points out five events that Smith alleged to be retaliatory.  However, in opposing the motion, Smith is only arguing that two events were in fact retaliatory.

forward and show that there is a genuine issue of material fact.  Specifically, there is no evidence that giving Richardson a copy of Smith's complaint or that Scott's decision not to proceed with a preliminary inquiry constituted an adverse job action.  Moreover, Smith has provided no evidence that these two actions were caused by any alleged protected activity.  Summary judgment will be granted on this claim.

### 2.  42 U.S.C. § 1983

In order to establish a retaliation claim pursuant to § 1983, Smith must show that she: (1) engaged in a protected activity; (2) her employer took adverse employment action, and (3) that her conduct was a substantial or motivating factor for the adverse employment action.  *See Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003).  In this case, it is not clear what conduct Smith is alleging amounts to a protected activity.  Nevertheless, it is clear, as discussed in part III(B)(1), that Smith has failed to show any adverse job action or that any adverse job action was motivated by her protected activity.  Summary judgment will be granted.

### 3.  The Rehabilitation Act

A prima facie case of retaliation under the RA also requires a showing of three elements: (1) involvement in a protected activity; (2) an adverse employment action; and (3) a causal link between the two.  *Coons v. Sec'y of United States Dep't of Treasury*, 383 F.3d 879, 887 (9th Cir. 2004).  The analysis with respect to Title VII and § 1983 applies equally here.  Smith has failed to show any adverse employment action or causal connection between a protected activity and an adverse employment action.  Summary judgment will be granted.

### C.  Equal Protection

Defendants seeks summary judgment with respect to Smith's 42 U.S.C. § 1983 action alleging a violation of the Equal Protection Clause.  Defendant's argue that Smith has no evidence to support such a claim.  It is not clear to the court what argument Smith is making to oppose this claim.  Smith merely states as follows:

> The same analysis with respect to the hostile working environment applies with respect to the equal protection claim. Here, additional matters are noted. Richardson's rebuttal came on June 21st of 2005 pointing out that Plaintiff had a history of complaining. Thus, Plaintiff had a history of opposition activity prior to her participation activity which commenced on August 8th, 2005 by filing with the EEOC. Both Activities are protected. 42 U.S.C. § 2000e-3. Acts following her opposition to the conduct could be construed as retaliatory. This would include Richardson's statement in Plaintiff's evaluation about others deserving above standard and recommending that Plaintiff upgrade her POST certification. Additionally, his response to Plaintiff's request regarding being informed of his whereabouts could also be construed as retaliatory.

(Opp'n to Mot. for Summ. J. (# 42) at 3-4) (footnote omitted).

In order to establish a § 1983 Equal Protection violation, Smith must show that Defendants, acting under color of state law, discriminated against her as a member of an identifiable class and that the discrimination was intentional. *Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130, 1134 (9th Cir. 2003). In this case, the court finds that Defendants have met their initial burden of showing that Smith has no evidence to support a cause of action for a violation of the Equal Protection Clause. Furthermore, Smith has failed to present any evidence or argument that would suggest she was discriminated against on account of her gender or that such discrimination was intentional.

**D. Rehabilitation Act**

Section 504 of the RA provides, in part, "[n]o other qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . ." 29 U.S.C. § 794(a). The standards used to determine whether the Rehabilitation Act has been violated in the employment discrimination context is the same as the standards applied under Title I of the Americans with Disabilities Act of 1990 ("ADA").[5]  29 U.S.C. § 794(d); *Coons*, 383 F.3d at 884. In order to establish a prima facie

---

[5] Both the ADA and the RA prohibit discrimination on the basis of disability. However, the ADA applies only to public entities while the RA prohibits discrimination in all federally-funded programs. *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002).

case of employment discrimination, an employee must demonstrate that he or she (1) has a disability, (2) is otherwise qualified to perform the essential functions of the job, and (3) has suffered an adverse employment action because of his or her disability. *Zukle v. Regents of University of California*, 166 F.3d 1041, 1045 (9th Cir. 1999) (citations omitted); *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1246 (9th Cir. 1999) (citing *Kennedy v. Applause*, 90 F.3d 1477, 1481 (9th Cir. 1996)).

It appears to be undisputed that Smith has lupus. *See* (Opp'n to Mot. for Summ. J. (# 42), Decl. of Charmaine Smith at 2.) Defendants argue that Plaintiff cannot show she has a disability because Smith's lupus does not substantially limit any major life activity. Defendants further argue that Smith is unable to show that she suffered any adverse employment action because of her lupus. Smith responds by arguing that her lupus substantially interferes with her daily life activities of sleeping and concentrating. Smith does not, however, argue that she suffered any adverse employment action on account of her alleged disability.

As has previously been discussed, Defendants have met their initial burden of showing that Smith has no evidence that she has suffered an adverse employment action. Furthermore, Smith has failed to come forward with evidence establishing a genuine issue of material fact as to whether there was, in fact, an adverse employment action. "An adverse employment action is any action 'reasonably likely to deter employees from engaging in protected activity." *Pardi v. Kaiser Foundation Hosp.*, 389 F.3d 840, 850 (9th Cir. 2004) (quoting *Ray v. Henderson*, 217 F.3d 1234, 1243 (9th Cir. 2000)). The conduct described in this action is simply insufficient to constitute such an adverse employment action. Because there is no evidence that Smith suffered an adverse employment action, summary judgment will be granted.

### E. Intentional Infliction of Emotional Distress

To establish a claim for intentional infliction of emotional distress, Smith must establish the following elements: "(1) extreme and outrageous conduct with either the intention of, or reckless

disregard for, causing emotional distress, (2) the plaintiff having suffered severe or extreme emotional distress and (3) actual or proximate causation." *Olivero v. Lowe*, 995 P.2d 1023, 1025 (Nev. 2000) (citations omitted). Extreme and outrageous conduct "is that which is 'outside all possible bounds of decency' and is regarded as 'utterly intolerable in a civilized community.'" *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998) (citations omitted).

In this case, Defendants argue that the only conduct that is arguably within the definition of outrageous is Fiske's placement of a dead lizard in a burrito he gave Smith. However, according to Defendants, even if this action were outrageous, there is no evidence that Smith suffered severe or extreme emotional distress. In opposition, Smith argues that there were several outrageous incidents including the lizard in the burrito, the fish bait incident, constant farting in front of Smith's clients,[6] and the stink bomb. Smith further argues that she suffered distress from the lizard incident in that she was unable to eat for several days, she got sick, she had insomnia, and she gained an aversion to Mexican food.

Looking at the evidence in the light most favorable to Smith, the court finds that there is a genuine issue of material fact as to whether Fiske's conduct was outrageous. In addition, there is a genuine issue of material fact as to whether Smith suffered severe or extreme emotional distress. There is evidence that Smith "got really sick" following the lizard incident. (Defs.' Mot. for Summ. J. (# 39), Dep. of Charmaine Smith at 93:4.) There is also evidence that Smith didn't eat for a day and a half following this incident. *Id*. at 99:17-20. However, there is no evidence that any defendant other than Fiske engaged in conduct that could be considered outrageous. Looking at the evidence in the light most favorable to Smith, summary judgment will be denied with respect to Fiske's conduct. To the extent Smith has asserted a claim of intentional infliction of emotional distress against any other defendant, summary judgment will be granted. Although all federal claims have been dismissed, the court will retain supplemental jurisdiction over Smith's cause of

---

[6]No evidence has been cited to support this allegation or explain the factual circumstances.

13

action for intentional infliction of emotional distress.

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment (# 39) is hereby GRANTED in part and DENIED in part. Defendants motion is denied with respect to Smith's cause of action for intentional infliction of emotional distress against Fiske. Defendant's motion is granted in all other respects.

IT IS SO ORDERED.

DATED this 13th day of September, 2007.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE